UNITED STATES of America

v.

Mark Anthony WILLIFORD.

Crim. No. 89–00259(1).

United States District Court,
E.D. Pennsylvania.

Dec. 21, 1989.

Susan Harrison, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Jack Myers, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Following a jury trial on December 5 and 6, 1989, defendant Mark Anthony Williford was found guilty of two counts of Distribution of Cocaine in violation of 21 U.S.C. § 841(a)(1) and two counts of Distribution of Cocaine Within 1,000 Feet of a School, in violation of 21 U.S.C. § 845a. Defendant has filed a "Motion for Judgment not Withstanding the Verdict; Motion for Judgment of Acquittal and/or Motion for New Trial."

In the Motions the defendant contends that:

1. The verdict was contrary to law.

2. The verdict was contrary to the weight of the evidence.

3. The verdict was unsupported by the evidence.

4. The verdict was contrary to the evidence.

5. The court erred in its ruling as concerns the Suppression Hearing relative to the admissibility of the evidence, as concerns "identification."

At trial two stipulations were jointly entered into evidence by the defendant and the government. The first stipulation was that the drug distributions in question were within 1000 feet of the Hunter Elementary School. The second stipulation was that the substance distributed to each of two undercover police officers was indeed cocaine. Therefore the only essential issue raised by the defense at trial was the identification of the defendant by the two Philadelphia police officers, Officer Stanford and Officer Sewell. The defendant moved to suppress evidence of the identification made by these two police officers. After a Suppression Hearing on December 4, 1989, the Motion was denied.

The Federal Rules of Criminal Procedure do not provide for a Motion for Judgment Notwithstanding the Verdict, but such a motion would, in substance, be equivalent to a Motion for a Judgment of Acquittal made after discharge of the jury, pursuant to Fed.R.Crim.P. 29(c). Consequently I will treat the combined Motions as a Motion for a New Trial, pursuant to Fed.R.Crim.P. 33, based primarily on my ruling permitting introduction of evidence concerning identification by undercover Police Officers Stanford and Sewell, and a Motion for Judgment of Acquittal pursuant to Fed.R. Crim.P. 29 based primarily on the sufficiency of identification evidence.[1]

■ With regard to the motion for a new trial, the Court may grant a new trial in the interest of justice. The standard for admission of identification evidence is found in *Manson v. Brathwait*, 432 U.S. 98, 114–17, 97 S.Ct. 2243, 2253–54, 53 L.Ed.2d 140

(1977). Under *Manson*, identification evidence, even if the identification had derived from an unnecessarily suggestive source, need not be excluded if the totality of circumstances surrounding the identification indicates that it was reliable. In *Manson*, the Supreme Court upheld a police officer's identification of the defendant from an array consisting of a single photograph because the officer was a trained observer, had had an adequate opportunity to view the suspect, had given an accurate description of the suspect at the time of the offense and was certain about the identification.

■ With regard to the Motion for Judgment of Acquittal, under Fed.R.Crim.P. 29 it is well settled that: "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). In making this determination, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Coleman*, 862 F.2d 455, 460–61 (3d Cir.1988), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). For a judgment of acquittal to be granted, the Court must decide, as a matter of law, that the evidence presented at trial was insufficient to support the conviction. "In reviewing testimony for determining a Rule 29 motion, questions of the weight of the evidence or of the credibility of the witnesses is foreclosed by the jury's verdict." *United States v. Cohen*, 455 F.Supp. 843, 852 (E.D.Pa.1978), aff'd 594 F.2d 855 (3d Cir.1978), cert. denied, 441 U.S. 947, 99 S.Ct. 2169, 60 L.Ed.2d 1050 (1979). With these standards in mind I shall review the facts established at trial.

Identification of the defendant came about in this way: On May 3, 1989, Offi-

---

**1.** Rule 34 of the Federal Rules of Criminal Procedure also permits a Motion for Arrest of Judgment attacking jurisdiction or the failure to

charge an offense in the indictment. This motion is not warranted under the facts of this case.

cers Stanford and Sewell were on undercover duty in the vicinity of the Hunter Elementary School in Philadelphia. Both officers carried concealed audio transmitting equipment and both attempted to make drug purchases within view of a hidden surveillance camera. On that day each made a purchase of cocaine from an individual theretofore unknown to them. They did not make an arrest at that time, since they wanted to preserve their "cover". Instead, they furnished a brief description of the seller to uniformed policemen who later went into the area to make arrests. The individual from whom they made the May 3 purchases was not found or arrested on that day.

On May 5, 1989, the same officers were again on duty at a different location in the same general neighborhood. They made purchases of heroin from an individual later identified as Tyrone Booker. Upon their return to the police station on May 5, the two officers were asked one after the other to look at nine pictures of individuals who had been arrested that day, based on descriptions furnished by undercover officers that day. Each of the officers independently identified Tyrone Booker as the person from whom they had received heroin that day.

While looking at the pictures of the nine individuals arrested on May 5, Officer Stanford noticed the picture of the defendant. Upon making this discovery, he went at once to one of the rooms where some of the suspects were being held. This was one of several rooms where suspects were held during processing. No one directed Officer Stanford to any particular holding room, but by chance the first room he tried was the room where he found an individual which he identified as the person from whom he had purchased cocaine two days earlier, on May 3. That person is the defendant.

Officer Stanford then spoke to Officer Sewell, and said, in effect, look at these pictures and see who you see. Officer

Sewell expected to, and did, see Tyrone Booker. But to his surprise, he also saw the defendant, whom he identified as the person from whom he had purchased cocaine on May 3. Officer Sewell also went to the room where Officer Stanford had seen the defendant, but because of the viewing angle, was unable to see the defendant's face. Neither of the officers entered the room because, since they were continuing to work undercover, they did not want to be identified by suspected drug sellers.

Both Officers Stanford and Sewell, as well as the case agent for the May 5, 1989 operation, Officer Kevin Browne, testified at the suppression hearing on December 4, 1989 that they did not expect to see a photograph in the May 5 array of a suspect from the May 3 transactions. Officer Browne further testified that he had not been involved in the May 3 operation.

Both officers testified that during the approximate minute to a minute and a half necessary to make the cocaine purchases they had been in close proximity to the defendant and had a good look at him in broad daylight. The defendant's face was uncovered and no major distractions were present. At both the suppression hearing and the trial both officers were positive of the identification of the defendant, as they had been when initial identification was made two days after the purchases. Both officers were trained and experienced undercover policemen, whose daily duties required them to make the kind of identification involved in this case. The overall descriptions they gave on May 3 were not inconsistent with the defendant's appearance although they varied in certain details.[2]

■ I find that both officers were genuinely surprised to discover defendant Williford's photograph in the May 5, 1989 array, having assumed that the man from whom they had purchased cocaine two days before had simply gotten away. Case Agent Browne, who was in charge of setting out

**2.** Officer Stanford described the defendant as a brown male 5 ft. 7 to 5 ft. 8 with brown skin and a medium build. Officer Sewell described him as a black male with a dark complexion approximately 5 ft. 11 in height.

the photograph display on May 5 had not been involved in the May 3 operation and had no reason to know that Williford was wanted in connection with the May 3 transaction. Nevertheless, I further find that even though the inclusion of defendant was accidental, the May 5 photographic array, consisting of nine photographs of persons arrested that day upon identifications furnished by officers who had made drug purchases that day, was not unduly suggestive. The photos showed at least five men of the same race as the defendant and they were all of medium build. The defendant and two other men had hats on and two others appear to have had mustaches. There was nothing which singled the defendant out. The identification in question was made only two days after the incidents in question by trained police officers who had been in close contact with the defendant during the cocaine purchases.

■ With regard to denial of the motion to suppress identification evidence, I found that the nine picture array was not prepared with any intention to be suggestive, but that instead the identification of the defendant from that array was fortuitous and unexpected. I further found that the confirmation of identification by Officer Stanford was made without any direction or suggestion by anyone. Both the initial identification by both Officers and the confirmation by Officer Stanford were made only two days after the purchases in question by trained police officers who observed the defendant for a sufficient time and under sufficiently good lighting conditions to make good identification possible. The identifications by Officers Stanford and Sewell clearly met the *Manson* standards for reliability and denial of the Motion to Suppress identification was correct.

■ With regard to the sufficiency of the evidence to sustain the verdict of the jury, it is obvious that the identification by the Police Officers was essential to the government's case. The aural and video recordings were, for technical reasons, of poor quality and inconclusive. The defendant stalwartly maintained his innocence and produced testimony of good character,

and a witness who attacked the accuracy of the identification.

The principal factors supporting the position that the Police Officer's identification was sufficiently reliable to support the jury's verdict is set out above in the discussion of the *Manson* test. In addition, I note that all of the circumstances of the identification of the defendant which had been heard by the Court at the suppression hearing were fully developed before the jury, and the defendant's position was forcefully and skillfully presented. The jury was in a position to judge, as fact finders, essentially the same facts which the Court had used in making its legal ruling on the identification evidence and the Court cautioned the jury to consider all of this evidence. The jury obviously chose to believe the testimony of the two officers rather than that of defendant.

I find that sufficient evidence was presented to the jury upon which to base its verdict. Under the standards discussed above, the verdict of the jury must stand.

Accordingly, defendant's Motions must be denied.